**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**ADAM LAATIRIS,**

**Plaintiff,**

**v.**

**BANQUE CENTRALE POPULAIRE,**

**and**

**MOHAMMED ALI IDRISSI,**

**Defendants.**

**Civil Action No. 24-3240 (JDB)**

## MEMORANDUM OPINION

Adam Laatiris sued his former employer, Banque Centrale Populaire (BCP), and supervisor, Mohammed Ali Idrissi, under various District of Columbia laws for a litany of alleged abuses that occurred during his employment. BCP moved to dismiss for failure to state a claim. For the reasons set forth below, BCP's motion to dismiss is granted.

## BACKGROUND

Laatiris was employed at BCP for nearly two years. Compl. [ECF No. 1-1] at 3. The thrust of his complaint is that during that period, his manager, Idrissi, coerced and abused him causing financial hardship and emotional distress.

Laatiris alleges that Idrissi approached him at his previous job and offered him a position at BCP as a "Relationship Manager." Id. As part of the application process, Idrissi asked Laatiris to alter his resume to show that he had completed a degree in Business Administration, even though he had not finished the program. Id. at 14. Laatiris got the job, but Idrissi would leverage the

resume alteration to make unreasonable demands through the course of his employment and provide cause for terminating him.  Id.

During his time at BCP, Laatiris was supervised by Idrissi.  Id. at 8.  Many of Laatiris's complaints relate to Idrissi's alleged mismanagement of their office.  Idrissi forced Laatiris to "work overtime" on "multiple occasions" by "assigning tasks at the last minute" before closing time.  Id.  This caused Laatiris to work late hours "3–4 times a week" for a period of six months.  Id.  As a result, Laatiris suffered "severe stress and disturbance" to his work-life balance.  Id.  Idrissi also failed to provide Laatiris with his W-2 form, causing him to file his taxes late.  Id. at 13.  Finally, Laatiris accuses Idrissi of creating invoices for office repairs that never occurred to steal money from BCP.  Id.

Laatiris and Idrissi's professional relationship was acrimonious.  During a business trip, Laatiris discovered that Idrissi had "ma[de] negative and factually incorrect statements about [his] character to upper management."  Id. at 9.  Idrissi allegedly told BCP management that Laatiris was "arrogant, disrespectful, and that he would also ignore phone calls (from Idrissi)."  Id. (internal quotation marks omitted).  After he returned, Laatiris discovered that Idrissi had changed the locks on the office door and ordered the building security guard not to allow him into the office before Idrissi had arrived.  Id.  This was distressing to Laatiris because it interfered with his ability to arrive at work early and unlock the office.  Finally, Laatiris alleges that Idrissi coerced him into loaning Idrissi $9,000 "with the understanding and fear that [Laatiris] would lose his job" if he refused.  Id. at 12.  Although Idrissi promised to repay Laatiris upon receiving his tax return, he never did so.  Id.

Laatiris connects BCP to his supervisor's alleged misdeeds by accusing the bank of being indifferent to Idrissi's mismanagement and "protecting" Idrissi from consequences.  Id.

Independent of Idrissi's alleged misdeeds, Laatiris also alleges that BCP performed financial services for American clients despite its lack of certain unspecified licenses that are required to operate as a commercial bank under U.S. law. Id. at 7.

## STANDARD OF REVIEW

When evaluating a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must make "note of the elements a plaintiff must plead to state a claim," Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009), and then determine whether a plaintiff has pled those elements in a manner that "state[s] a claim to relief that is plausible on its face," id. at 678 (internal quotation marks omitted). A plaintiff's allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citation modified). The court must assume that all well-pleaded factual allegations are true and draw any reasonable inferences in favor of the plaintiff. Sissel v. Dep't of Health & Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014). But a court need not accept a plaintiff's legal conclusions as true nor take as given any legal conclusions couched as factual allegations. Twombly, 550 U.S. at 555.

## ANALYSIS

Although much of the complaint is difficult to parse,[1] the Court believes Laatiris attempts to state five claims for relief: unlawful discrimination, hostile work environment, retaliation, fraud, and breach of fiduciary duty. See Compl. at 6. For the reasons below, the Court dismisses these claims.

### I. D.C. Human Rights Act

[1] Plaintiff is currently pro se, but the complaint and opposition to motion to dismiss were filed while plaintiff was represented by counsel. Thus, the Court will not "construe[] liberally" the allegations in plaintiff's complaint as it would if the complaint were filed by a pro se plaintiff. See Zinda v. Johnson, 463 F. Supp. 2d 45, 48 (D.D.C. 2006).

### A. Discrimination

The D.C. Human Rights Act (DCHRA) prohibits employers from "discharg[ing]" or "otherwise discriminat[ing] against" any employee "for a discriminatory reason based upon" a protected characteristic. D.C. Code § 2-1402.11(a)(1)(A). To state a claim for unlawful discrimination, a plaintiff must allege that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." McCaskill v. Gallaudet Univ., 36 F. Supp. 3d 145, 152 (D.D.C. 2014). The DCHRA recognizes the following protected classes: "race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, political affiliation." D.C. Code § 2-1402.11(a). "Employment discrimination claims under the DCHRA are analyzed using the same legal framework as federal employment discrimination claims." Badwal v. Bd. of Trs. of Univ. of D.C., 139 F. Supp. 3d 295, 308 (D.D.C. 2015).

Laatiris fails on the first element because he does not allege that he is a member of a protected class. See Settles v. Universal Prot. Serv., LLC, Civ. A No. 23-2249 (ABJ), 2024 WL 1328464, at *4–5 (D.D.C. Mar. 28, 2024) (dismissing Title VII claim for failure to allege protected class status). His complaint does not include facts pertaining to protected class status or provide a basis for the Court to draw an inference about what protected class, if any, Laatiris believes is relevant. Although it is difficult to determine what Laatiris believes motivated Idrissi's hostility, it appears to partially flow from Idrissi's alleged "envy or jealousy" over his professional success, not from status-based discrimination. Compl. at 10. Because Laatiris does not state his protected class, he also fails to plausibly allege that any adverse action he suffered was caused by discrimination based on that status. The nature of Idrissi's alleged adverse actions towards

Laatiris—such as revealing that Laatiris had altered his resume during the hiring process—do not suggest that those actions were motivated by status-based discrimination. Accordingly, his DCHRA discrimination claim must be dismissed.

**B. Hostile Work Environment**

Next, Laatiris alleges that Idrissi created a hostile workplace environment by forcing him to work emergency overtime, limiting his access to workplace facilities, making negative statements about him to corporate management, and undermining his relationships with clients.

Like his discrimination claim, Laatiris's hostile work environment claim fails because he does not plead protected class status. The DCHRA specifically prohibits "harassment," which includes the creation of a hostile work environment, "based on one or more protected characteristics specified in subsection (a)." D.C. Code § 2-1402.11(c-2)(1) (emphasis added). But again, Laatiris has not explained what protected class he believes is relevant, and "none of the comments or actions directed at [Laatiris] expressly focused on his race, religion, age, or disability." Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008). Because he does not identify any protected class, Laatiris also fails to demonstrate that he was harassed on the basis of his membership in that class. Instead, the friction between Laatiris and Idrissi appears to stem from personal animosity between the two, "envy or jealousy," Compl. at 10, which cannot form the basis for a DCHRA claim. Accordingly, Laatiris's DCHRA hostile work environment claim must be dismissed.

**II. Retaliation**

The D.C. Workplace Fraud Act prohibits employers from misclassifying certain employees as independent contractors and further prohibits retaliation against employees who bring claims under the Workplace Fraud Act. See D.C. Code §§ 32-1331.01–32-1331.15. Importantly, the

Workplace Fraud Act protections apply "only to the construction services industry." Id. § 32-1331.02; see id. § 32-1331.01(2) (defining covered "employees" as those who provide "construction services"); Coulibaly v. Kerry, 213 F. Supp. 3d 93, 158–59 (D.D.C. 2016) (dismissing Workplace Fraud Act claim for failing to allege connection to the construction industry). The provision of the Workplace Fraud Act that prohibits retaliation only applies to parties who exercise their rights under a "provision of this subchapter," D.C. Code § 32-1331.10(a), meaning construction industry workers who were misclassified as independent contractors.

Laatiris asserts in his complaint that he worked at BCP as a "Relationship Manager." Compl. at 3. He does not claim that this was a role in the construction industry, and nothing in the record suggests so. Laatiris also does not allege that BCP misclassified him as an independent contractor. To the contrary, the complaint specifically asserts that Laatiris was hired by BCP as an "employee." Id. Accordingly, the Workplace Fraud Act does not apply to Laatiris and this claim must be dismissed.

**III. Fraud**

Laatiris next alleges that Idrissi committed fraud by withholding his W-2 form, forging business records, and coercing Laatiris into lending him money. Compl. at 12.

But the statute under which Laatiris purports to brings this claim, D.C. Code § 22-3221, is a criminal law. See D.C. Code tit. 22 ("Criminal Offenses and Penalties"); District of Columbia Theft and White Collar Crimes Act of 1982, D.C. Law 4-164, § 121 (codified as D.C. Code § 22-3221). This dooms his claim because there is "no private right of action under a criminal statute." Kungle v. State Farm, Fire & Cas. Co., 48 F. Supp. 3d 67, 77 (D.D.C. 2014); see Cent. Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 190 (1994) ("We refused to infer a private

right of action from a bare criminal statute.") (citation modified). Moreover, private plaintiffs lack standing to bring criminal actions because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."[2] Ahuruonye v. U.S. Dep't of Interior, 312 F. Supp. 3d 1, 12 (D.D.C. 2018) (quoting Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)). Accordingly, Laatiris's claim for criminal fraud must be dismissed.

### IV. Breach of Fiduciary Duty

Finally, Laatiris contends that defendants violated D.C. Code § 29-406.30,[3] which covers the "[s]tandards of conduct for directors" of certain corporations. But this statute is inapplicable because it governs nonprofit corporations, not for-profit ones like BCP, and does not supply a private cause of action.[4]

For-profit corporations like BCP are outside the scope of section 29-406.30. That law is part of Title 29, Chapter 4 of the D.C. Code, which governs "Nonprofit Corporations." D.C. Code ch. 4; see D.C. Code § 29-401.01 ("This chapter may be cited as the 'Nonprofit Corporation Act of 2010.'"). And although Laatiris does not tie his claim to specific statutory language, the most relevant subsection provides that "Each member of the board of directors, when discharging the duties of a director, shall act: (1) In good faith; and (2) In a manner the director reasonably believes to be in the best interests of the nonprofit corporation." D.C. Code § 29-406.30(a) (emphasis

---

[2] Standing is jurisdictional. Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). Accordingly, the Court considers this argument under Federal Rule of Civil Procedure 12(b)(1), which provides for the dismissal of actions for lack of subject matter jurisdiction.

[3] In some parts of the complaint, Laatiris refers generally to D.C. Code § 29.406—a subchapter called "Directors, Officers, and Employers"—without identifying provisions he believes the defendants violated. See Compl. at 6, 11. The Court will limit its analysis to the particular section Laatiris has pointed to: D.C. Code § 29.406.30. See Rivera v. Rosenberg & Assocs., LLC, 142 F. Supp. 3d 149, 158–59 (D.D.C. 2015) (explaining that plaintiff's failure to identify specific provisions or subsections that formed basis of his allegations constituted failure to state a claim).

[4] Laatiris also does not allege that Idrissi is a "director" of BCP. Indeed, the complaint identifies him as the "head of the BCP Washington DC Branch." Compl. at 5.

added). But BCP is a for-profit bank, not a nonprofit corporation, so section 29-406.30(a) does not apply to it.

Even if section 29-406.30 applied to BCP, the statute does not create a private cause of action for a corporation's employees to sue managers or the corporation itself for breach of fiduciary duty.[5] Cf. District of Columbia v. Delta Phi Epsilon, Civ. A No. 2021-1809 B (SFM), 2022 WL 6862954, at *12 (D.C. Super. Ct. Sept. 21, 2022) (discussing suit brought by D.C. government, not a private individual, to enforce § 29-406.30). In the absence of an "explicit" cause of action, the plaintiff bears the "burden" to "demonstrate that . . . the D.C. Council intended to imply a right to sue for damages for violations of" an act. Coates v. Elzie, 768 A.2d 997, 1001 (D.C. 2001). Laatiris does not suggest that the D.C. Council intended to create an implied right of action for private citizens in section 29-406.30.

Accordingly, Laatiris's section 29-406.30 claim must be dismissed as well.

**CONCLUSION**

[5] Sections 29-406.31 and 29-406.33 establish causes of action against directors of a nonprofit corporation but limit the possible plaintiffs to the nonprofit corporation or its members. See § 29-406.31(a), (b)(1)(A), (d); § 29-406.33(a); see also § 29-401.02(25)(A) (defining member as a party "that has the right . . . to select or vote for the election of directors or delegates or to vote on any type of fundamental transaction").

For these reasons, the Court grants BCP's motion to dismiss.[6] [7] A separate Order shall issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: August 19, 2025

[6] In so doing, the Court also denies Laatiris's motion for leave to file an amended complaint. See Pl.'s Pro Se Mot. Oppose Def.'s Mot. Dismiss & Request Leave to Amend in Alt. [ECF No. 14] at 2–4. The Court had previously provisionally denied this motion for failure to adhere to Local Civil Rules 7(i) and 15.1—which require a motion for leave to file an amended complaint to include the proposed amended complaint—but held open future consideration of whether to provide leave to amend. See Minute Order, May 27, 2025. The Court now denies Laatiris's motion both because he failed to include a proposed amended complaint and because any amendment would be futile. In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 215 (D.C. Cir. 2010) ("[A] district court has discretion to deny a motion to amend on ground of futility where the proposed pleadings would not survive a motion to dismiss." (internal quotation marks omitted) (alteration in original)); Dickens v. D.C., Civ. A. No. 23-2900 (CRC), 2025 WL 885124, at *9 (D.D.C. Mar. 21, 2025) ("Non-compliance is more than a mere technical error, the lack of a separate motion and proposed amended pleading makes it impossible for the Court to evaluate the merits of [Laatiris's] request for leave to amend." (citation modified)).

[7] The Court grants BCP's motion to dismiss with respect to both parties. There is no indication that Idrissi was ever served with the complaint in this case, as required by Federal Rule of Civil Procedure 4(c)(1). Even if he was, the claims against BCP and Idrissi are intertwined, and so in finding that Laatiris has failed to state a claim against BCP this Court necessarily concludes that Laatiris fails to state a claim against Idrissi as well. Laatiris would thus not be able to pursue a default judgment against Idrissi. See Saint-Jean v. D.C. Pub. Sch. Div. of Transp., 815 F. Supp. 2d 1, 4 (D.D.C. 2011) ("A motion for default judgment will be denied unless the allegations in the complaint are legally sufficient to make out a claim.") (citation modified).